IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE NEGUSE, in his official capacity as a Member of the U.S. House of Representatives, *et al.*,<br><br>     *Plaintiffs*,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT *et al.*,<br><br>     *Defendants*. | Case No. 25-cv-2463-JMC |

**DECLARATION OF REPRESENTATIVE ADRIANO ESPAILLAT**

I, Adriano Espaillat, declare as follows:

1. I am a member of the U.S. House of Representatives, representing New York's 13th congressional district. I have been a Member of Congress since 2017.

2. From 2021 to the present, I have served on the Committee on Appropriations. Since 2023, I have served as the ranking member of the subcommittee on the Legislative Branch. I am also the chairman of the Congressional Hispanic Caucus (CHC), a group of more than forty Members of Congress of Hispanic and Latino descent.

3. I have personal knowledge of the facts and information in this declaration. I respectfully provide this declaration to explain how the unlawful, new oversight visit policy of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) prevents me from performing my oversight duties as a member of Congress and significantly harms my ability to serve my constituents.

1

**DHS and ICE Oversight Activities**

4. During my time in Congress, I have been actively engaged in oversight of DHS and ICE.

5. In the course of conducting oversight of DHS, I have performed numerous in-person visits to DHS facilities over the last eight years—some with advance notice provided and others with no advance notice. When President Trump implemented his first, chaotic Muslim Ban executive order a week after his 2017 inauguration, I went to John F. Kennedy (JFK) Airport in New York to offer assistance to detainees held there by Customs and Border Protection (CBP). My first visit to a detention center was on June 18, 2018, on Father's Day, when I visited the ICE Elizabeth Contract Detention Facility (ECDF) in Elizabeth, NJ, along with six other members, including Rep. Albio Sires whose district included the ECDF. ECFD is managed by CoreCivic, the second-largest private corrections company in the nation; because billions of taxpayer dollars go to supporting it, it underscores how oversight of the entire system is crucial. I visited because I wanted to speak with family members who had been separated due to President Trump's "Zero Tolerance" Policy, which had resulted in widespread family separations. ICE initially refused to let us in and made us wait an hour. When we were allowed to enter, we met multiple asylum seekers who had been arrested at the border, only to be separated from their young children.[1]

6. Based on what I observed during this visit, I co-sponsored legislation to facilitate access to counsel for individuals who had been separated from their families, and for other

---

[1] Later, in 2018, my office assisted in the reunification of multiple asylum seekers separated from their children at the border, including Yeni Gonzalez Garcia. ICE detained Ms. Gonzalez Garcia at the Eloy Detention Center in Eloy, AZ, and the Office for Refugee Resettlement held her three children at a contract facility, the Cayuga Center, in my district in New York. The Gonzalez Garcia family was ultimately reunited in New York, and I invited Ms. Gonzalez Garcia to the following year's State of the Union address.

vulnerable populations,[2] and to require reunification of families harmed by the "Zero Tolerance" Policy.[3]

7.  During that same June 2018 visit, I observed overcrowding and unsanitary conditions. Previously, there had been public reporting, in February 2018, that detainees at ECDF endured cramped and unhygienic living quarters; potentially contaminated drinking water; a lack of basic supplies, such as underwear; and maggots in the food and shower areas. In August 2019, I returned to ECDF to conduct an oversight visit to determine whether improvements had been made since my visit in 2018 and the reports I heard at that time. However, during my three-hour tour, I witnessed no improvement in conditions that I had observed at the facility since my visit the year previous.

8.  In December 2018, I undertook a fact-finding mission at the Sally Port of Entry and the Lordsburg Border Patrol Station in New Mexico, following the death of 7-year-old Jakelin Caal Maquin while in CBP Custody. Specifically, I visited the Antelope Wells Forward Operating Base, where Jakelin was initially processed, and the Lordsburg Border Patrol Station, where Jakelin was later transported by bus before being airlifted to a hospital in El Paso, TX.[4]

9.  In March 2019, after hearing from multiple community leaders and advocates, I pressed for the release of a Gambian national, Baba Sillah, who had been detained during a routine immigration appointment and was being held at 26 Federal Plaza in Manhattan.[5] When I arrived at

---

[2] Funding Attorneys for Indigent Removal (FAIR) Proceedings Act, H.R. 6527, 115th Cong. (2018).

[3] Family Unity Rights and Protection Act, H.R. 6236, 115th Cong. (2018).

[4] Press Release, *Representative Adriano Espaillat Statement Following U.S. Customs and Border Protection (CBP) Field Assessment and 7-Year Old Jakelin Caal's Death* (Dec. 20, 2018), https://espaillat.house.gov/media/press-releases/representative-adriano-espaillat-statement-following-us-customs-and-border.

[5] Adriano Espaillat, Press Release: *Representative Adriano Espaillat Statement on the Pending Release of Baba Sillah* (Mar. 15, 2019), https://espaillat.house.gov/media/press-releases/representative-adriano-espaillat-statement-pending-release-baba-sillah.

the facility, I was prevented from meeting directly with ICE for an hour. However, I ultimately spoke with William Joyce, then then-deputy Field Office Director, who assured me that Mr. Sillah would be released the same day.

10. In September 2020, I joined a number of colleagues in a visit to the Irwin County Detention Center (Irwin) in Ocilla, GA. I was concerned after a whistleblower complaint by a nurse at the facility alleged that invasive and unnecessary medical procedures, including hysterectomies, had been performed on detained women without their consent. I met with several immigrant women who had fled the Dominican Republic and arrived in Puerto Rico after a lengthy and dangerous journey, only to be sent to Irwin for deportation. I assisted these women in repatriation flights to the Dominican Republic, their country of origin. Following this visit, I wrote a letter to then-Acting Director of ICE Tony H. Pham reiterating my concern about abusive practices at this facility and requesting an immediate investigation at other detention facilities.[6] In May 2021, I released a press statement applauding the closure of Irwin County Detention Center by the Biden-Harris Administration.[7]

11. On May 27, 2025, I visited ECDF, along with Representative Nydia Velázquez, to support my oversight role both as a member of Congress and a member of the Committee on Appropriations.[8] Before that visit, my staff had provided notice to ICE. From what I observed,

---

[6] Letter from Adriano Espaillat to Tony H. Pham, Acting Director of ICE (Oct. 24, 2020), https://espaillat.house.gov/sites/evo-subsites/espaillat.house.gov/files/Congressmembers%20Espaillat%2C%20Johnson%2C%20and%20Ocasio-Cortez%20Letter%20--%20to%20ICE%20Acting%20Director%20Pham%20%28Re%20Irwin%20County%20Detention%20Center%29.pdf.

[7] Adriano Espaillat, Press Release: *Reps. Espaillat, Ocasio-Cortez, Johnson Commend Biden-Harris Administration on Closure of ICE Irwin County Detention Center* (May 21, 2021), https://espaillat.house.gov/media/press-releases/reps-espaillat-ocasio-cortez-johnson-commend-biden-harris-administration.

[8] Pramila Jayapal, Press Release: *Democrats Use District Work Period to Conduct Oversight of ICE Detention Centers* (June 3, 2025), https://jayapal.house.gov/2025/06/03/democrats-use-district-work-period-to-conduct-oversight-of-ice-detention-centers/

conditions had improved since my visit in 2019. There, I met noncitizens who had been detained despite having attended all their required appointments. By virtue of their detention, they had been separated from their families. We spoke with Karim Daoud, who had been in an ICE detention center for over 100 days; Karim expressed he did not always have access to culturally competent meals.

12.   These oversight visits are integral to other activities I undertake in my capacity as a Member of Congress, and a member of the committees that I sit on. For example, I have sent letters on the rescission of an ICE directive regarding the removal or deportation of minor children,[9] the ICE raids in California in early July 2025,[10] deployment of chemical agents near Members of Congress during an event in Los Angeles,[11] mistreatment of a Peruvian national at the South Louisiana ICE Processing Center,[12] reported incidents of wrongful detention by ICE agents in Puerto Rico and New Jersey,[13] my opposition to the IRS' plan to share taxpayer information with

---

[9] *See* Letter from Adriano Espaillat to Kristi Noem, Secretary of DHS, and Marco Rubio, Secretary of State (July 23, 2025).

[10] *See* Letter from Adriano Espaillat to Kristi Noem, Secretary of DHS, and Todd Lyons, Acting Director of ICE (July 18, 2025), https://juliabrownley.house.gov/wp-content/uploads/2025/07/DHS-ICE-Oversight-Letter-CA-Raids-1.pdf.

[11] *See* Letter from Adriano Espaillat to Pam Bondi, Attorney General (June 13, 2025), https://x.com/hispaniccaucus/status/1933625423767674952?s=46.

[12] *See* Letter from Adriano Espaillat to Todd Lyons, Acting Director of ICE (Mar. 19, 2025).

[13] Letter from Pablo José Hernandez and Adriano Espaillat, Members of Congress, to Kristi Noem, Secretary of DHS, and Caleb Vitello, Acting Director of ICE (Jan. 27, 2025), https://hernandez.house.gov/sites/evo-subsites/hernandez.house.gov/files/evo-media-document/01.27.25-letter-ice-raids-in-pr-nj.pdf.

DHS or ICE,[14] the need to return Kilmar Armando Abrego Garcia,[15] and the violent restraint and removal of Senator Alex Padilla from Secretary Noem's press conference.[16]

13.     In this Congress term alone, my office has managed nearly 60 casework inquires related to ICE, ranging from requests for referrals to legal service providers, to constituents detained in ICE facilities awaiting their hearings. My office has received more than 250 letters condemning ICE detention and demanding oversight of the agency. And in the last six months, I have held seven "Know Your Rights" forums and town halls, both in-person and virtual, for constituents who may be impacted by the drastic increase in ICE enforcement action resulting in detention. We also convened immigrant legal service providers regarding cuts to their funding.

14.     As part of my work on the Committee on Appropriations, I have regularly called for comprehensive reform of ICE operations to emphasize accountability, humane treatment, and alternatives to detention. On detention practices specifically, I noted that the decision to expand ICE's bed capacity would worsen the endemic abuse and preventable deaths already present in the detention system. I also requested additional public reporting on ICE contracts, inspection reports, and medical staffing to promote transparency in the facilities.[17]

---

[14] Letter from Adriano Espaillat and 22 other members of congress to Scott Bessent, Secretary of the Treasury, and Melanie Krause, Acting Commissioner of the Internal Revenue Service (Apr. 8, 2025), https://chc.house.gov/sites/evo-subsites/chc.house.gov/files/evo-media-document/quill-letter-%23l23823-chc-irs-itin-letter-uphold-privacy-and-integrity.pdf.

[15] Letter from Adriano Espaillat and 19 other members of congress to President Trump (Apr. 9, 2025), https://chc.house.gov/sites/evo-subsites/chc.house.gov/files/evo-media-document/chc-letter-to-president-trump-return-kilmar-abrego-garcia_2.pdf.

[16] Letter from Adriano Espaillat and 187 other members of congress to John Thune, Senate Majority Leader, and Mike Johnson, Speaker of the House (June 16, 2025), https://chc.house.gov/sites/evo-subsites/chc.house.gov/files/evo-media-document/letter-condemning-the-forceful-restraint-of-senator-alex-padilla-compressed.pdf.

[17] *See* Letter from Adriano Espaillat to Mark Amodei, Chair, Appropriations Committee, and Henry Cuellar, Ranking Member, Appropriations Committee (May 1, 2024), https://drive.google.com/file/d/1oc98p3warhzen-Zm0YlBMRz0ogu4IfJK/view; Letter from Adriano Espaillat to Mark Amodei, Chair, Appropriations Committee, and Lauren Underwood, Ranking Member, Appropriations Committee (May 2, 2025), https://drive.google.com/file/d/1MAteCNZkITwR8ezUrxRooHJ11ZWSbBEq/view?ts=6883bc03

15. I have sponsored a number of bills related to immigration detention and ICE accountability, including the Protecting Sensitive Locations Act,[18] the Preventing Fraudulent ICE Impersonation Act (which would enhance the penalties for unauthorized use of ICE apparel),[19] and the Fair Adjudications of Immigrants Act.[20] On July 23, 2025, I reintroduced a bill requiring body cameras be worn by immigrant enforcement officials when engaged in official operations, which I had previously introduced in the 116th and 117th Congresses.[21] I have also co-sponsored 200+ bills relation to immigration, including the No Secret Police Act,[22] the Protecting Data at the Border Act,[23] the Stop Unlawful Detention and End Mistreatment Act,[24] the Securing Help for Immigrants Through Education and Legal Development,[25] and the Access to Counsel Act.[26] In addition to introducing legislation, I have also offered numerous amendments, including an amendment to the FY 26 Military Construction, Veterans Affairs (VA), and Related Agencies Appropriations Act to protect VA medical centers from immigration enforcement, in response to hearing from my constituents; an amendment to the FY 26 Homeland Security Appropriations Bill prohibiting the use of funds to conduct immigrant enforcement in places of worship; and an amendment to H.R. 1 to do the same in schools, hospitals, and places of worship, in response to constituents' fears of being detained.

---

[18] Protecting Sensitive Locations Act, H.R. 1061, 119th Cong. (2025).
[19] H.R. 4652, 119th Cong. (2025).
[20] Fair Adjudications for Immigrants Act, H.R. 3050, 118th Cong. (2023).
[21] Immigration Enforcement Staff Body Camera Accountability Act, H.R. 4651, 119th Cong. (2025); ICE and CBP Body Camera Accountability Act, H.R. 531, 117th Cong. (2021); ICE and CBP Body Camera Accountability Act, H.R. 1013, 116th Cong. (2019).
[22] No Secret Police Act of 2025, H.R. 4176, 119th Cong. (2025) (prohibiting DHS officials from concealing their identities in enforcement operations).
[23] Protecting Data at the Border Act, H.R. 2604, 119th Cong. (2025) (requiring a warrant to search U.S. citizens' laptops or phones at ports of entry).
[24] Stop Unlawful Detention and End Mistreatment Act of 2025, H.R. 4078, 119th Cong. (2025) (to shed further light on ICE's secretive practices related to detention).
[25] SHIELD Act, H.R. 8980, 118th Cong. (2024)(ensuring access to counsel in immigration proceedings).
[26] Access to Counsel Act, H.R. 944, 119th Cong. (2025).

16. I have led or joined multiple amicus briefs related to immigration, including birthright citizenship and the sharing of taxpayers' confidential IRS information with ICE. I have also participated in the rulemaking process through commenting on DHS' and U.S. Citizenship and Immigration Services' (USCIS) implementation of the requirement for noncitizens to register their presence.[27]

**Defendants' Unlawful Obstruction of June 8, 2025 Oversight Visit**

17. In the weeks after my visit to ECDF on May 27, 2025, I began hearing reports from constituents that ICE was detaining individuals for more than one night at the ICE Field Office within the Jacob K. Javits Federal Office Building at 26 Federal Plaza in downtown New York (the 10th Floor Facility), which is located near my district.

18. On Sunday, June 8, 2025, Representative Velázquez and I went to 26 Federal Plaza to investigate these reports and conduct oversight. I had heard from advocates that ICE was holding individuals overnight, and because of a surge of arrests, conditions inside had deteriorated. I did not provide advance notice of my visit because it was important for me to see the conditions at the facility in real-time.

19. We arrived at around 3:00 pm. Upon arrival, we told the DHS officer that we were members of Congress and were interested in visiting the 10th Floor Facility, pursuant to our authority under section 527, because we had heard from constituents that detainees were being held there overnight. At first, the DHS officer denied us entry to the building entirely, but after 15 minutes, we were allowed to enter alone, without our staff members.

---

[27] Letter from Delia C. Ramirez, Adriano Espaillat, and 26 other members of congress to Kristi Noem, Secretary of DHS, and Kika Scott, Acting Director of USCIS (Apr. 10, 2025), https://ramirez.house.gov/sites/evo-subsites/ramirez.house.gov/files/evo-media-document/draft-ifr-public-comment-4.10.2025_0.pdf.

20. After we entered the lobby at 26 Federal Plaza, the same DHS officer told us that they were going to check with the Acting Deputy Field Office Director (Deputy FOD). I spoke with the Deputy FOD on the phone and told her that I had a right to enter. However, the Deputy FOD told us that we could not ascend to the 10th floor because it was a "sensitive facility."

21. Because we were unable to gain access to the 10th Floor Facility, we were unable to conduct oversight of that facility. As a result, we were unable to learn information about the conditions of detention at the 26 Federal Plaza ICE detention facility that could have informed our ability to serve our constituents, propose relevant legislation, and take other measures.

**Defendants' Unlawful Obstruction of July 14, 2025 Oversight Visit**

22. On July 14, I returned with Representative Velázquez to 26 Federal Plaza to conduct an oversight visit. I conducted this visit because I had continued to hear reports from constituents and advocates of the inhumane conditions of the 10th Floor Facility. I did not provide advance notice of my visit.

23. When we arrived at 26 Federal Plaza that morning, we told a DHS official that we wanted to go to the 10th floor because we understood individuals were being held there overnight. After we proceeded to the lobby, we were instructed to wait by the head of security but were not met by any DHS official. After some time waiting without receiving any additional information, we proceeded on our own volition to the 10th floor to conduct the oversight visit.

24. However, once we arrived at the 10th floor, we were denied access to the area where DHS was detaining the individuals. While we waited for approximately 45 minutes, multiple DHS staff told me and Rep. Velázquez that someone would come out shortly to speak with us, and that the Deputy FOD had been informed of our presence.

25. We asked security officials where the Deputy FOD was, as we wanted to speak with her. They said that she had sent other officials in her place, but that she would not speak with us

9

herself. They also told us again, as on June 8, that we could not enter because the 10th Floor Facility was a "sensitive facility."

26. One of the security officials told me and Rep. Velázquez to contact a public affairs representative, while still denying us access to the 10th Floor Facility to conduct oversight.

27. Despite not being able to access the 10th Floor Facility, we witnessed deeply concerning activities. We saw a man, who identified himself by name and as a resident of Hackensack, NJ. He appeared understandably distressed as he was being brought to the 10th Floor Facility by masked agents. When we asked federal agents basic questions about the man, such as his date of birth, those requests were ignored. Later, we observed another individual who appeared to be under arrest on the same floor. During the same visit, we witnessed masked ICE officers stationed on the 12th floor, where we were monitoring immigration court proceedings.

28. We left the building without being able to conduct oversight of the space on the 10th floor where individuals were being detained. We were unable to do so, despite the fact that we explicitly cited our statutory authority under Section 527 of the relevant appropriations bill. We continue to lack first-hand information regarding the conditions of detention at the detention facility at 26 Federal Plaza.

**The Significant, Irreparable Harm from Defendants' Unlawful Obstruction**

29. Oversight visits are critical to my legislative and appropriations work, as well as my ability to provide critical services to constituents.

30. Inability to access facilities like the detention facility at 26 Federal Plaza fundamentally obstructs my constitutional and statutory role of oversight. The importance of this oversight was underscored when a video was leaked on July 22, 2025, showing the inhumane conditions to which ICE subjected detainees in the same 10th Floor Facility that I twice attempted to gain access to. The obstruction that I faced both on June 8 and July 14 has thwarted my right to

oversight, and prevented earlier legislative and appropriations actions. After seeing the inhumane conditions featured in the video, I re-introduced the ICE and CBP Body Camera Accountability Act and introduced the Preventing Fraudulent ICE Impersonation Act, *supra* ¶ 12. These bills flowed from direct, though incomplete, observations of facility visits, and the importance that I saw in demanding more accountability from these agencies. Additionally, with Rep. Velázquez, I wrote to Secretary Noem demanding a full and immediate investigation into the reported use of the 10th floor at 26 Federal Plaza in New York City as a detention facility operated by ICE.[28] Had I been granted access sooner, as demonstrated by my record on these issues, I would have taken any action possible to avert the harm to these detainees.

31. Moreover, denial of access impairs my ability to demand accountability from ICE. Without access to ICE detention facilities, ICE's operations remain opaque, forcing me to rely on second-hand accounts and whistleblower reports, all while allowing ICE's practices to continue with impunity. These visits would allow me to validate, document, and address the numerous constituent concerns that I have received about conditions in ICE facilities, and observe in real-time the conditions that detainees are facing. This in turn will inform any policy responses, and the need to urgently implement them.

32. My oversight visits to facilities the ECDF in New Jersey and to 26 Federal Plaza in Manhattan are essential because many of my constituents are detained or impacted by these facilities, among others. My district contains neighborhoods with deep immigrant roots like Harlem, Washington Heights, and the Northwest Bronx; their proximity to these detention facilities means

---

[28] Letter from Adriano Espaillat, Chair, Congressional Hispanic Caucus, and Nydia M. Velázquez, Member of Congress, to Kristi Noem, Secretary of DHS (July 23, 2025), https://chc.house.gov/sites/evo-subsites/chc.house.gov/files/evo-media-document/2025-07-23-oversight-letter-re-ice-detention-center-on-10th-floor-of-26-federal-plaza-in-new-york-city.pdf.

that when ICE conducts enforcement raids in my district, my constituents may be sent these facilities.

33. For these reasons, I intend to conduct both announced and unannounced visits to DHS facilities detaining noncitizens again for the purpose of conducting oversight and to address the concerns of my constituents.

34. The inability to access these detention facilities without prior notice significantly harms my ability to conduct oversight. My constituents rely on my ability to verify and investigate abuse allegations; without this critical mechanism, I fear that they will result in a loss of trust both in the government and in my capacity to serve them as their elected official.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this __7__ day of August 2025 in __New York__

ADRIANO ESPAILLAT