IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE NEGUSE, in his official capacity as a Member of the U.S. House of Representatives, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT *et al.*,<br><br>*Defendants*. | Case No. 25-cv-2463-JMC |

**DECLARATION OF REPRESENTATIVE JOE NEGUSE**

I, Joe Neguse, declare as follows:

1. I am a member of the U.S. House of Representatives, representing Colorado's 2nd congressional district. I have been a member of Congress since 2019.

2. I have served as the Assistant Democratic Leader in the House since 2024 and am a member of the House Judiciary Committee. I also previously served on the Immigration Subcommittee of the House Judiciary Committee.

3. This declaration is based on facts within my personal knowledge and the knowledge I have acquired in the course of my duties as a congressmember. I respectfully provide this declaration to explain how the unlawful, new oversight visit policy of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) prevents members of Congress from performing their oversight duties.

1

**DHS and ICE Oversight Activities**

4. As a member of the House Judiciary Committee, I have been actively engaged in oversight of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE).

5. In the course of conducting oversight of DHS, I have previously performed in-person visits to DHS facilities since becoming a congressmember.

6. For example, in 2019, I visited the El Paso Service Processing Center in El Paso, Texas. In 2019 and 2020, I also visited the Denver Contract Detention Facility in Aurora, Colorado, that was used to detain or otherwise house noncitizens. That Aurora facility is operated by GEO Group, a private contractor. During a visit to the Aurora facility, I spoke directly with detainees and observed the conditions of their detention firsthand.

7. Staff members acting under my direction have also aided my oversight duties on the ground by visiting ICE facilities, including in 2019, 2023, and 2024.

8. These on-the-ground oversight visits and activities are integral to other oversight activities I have undertaken to investigate immigration detention and craft and deliberate on relevant legislation, including DHS appropriations. Of particular concern to me has been the use of private contractor facilities to detain noncitizens, especially because a private contractor operates the ICE detention facility in Aurora, Colorado. For example, I have issued statements and written letters to DHS and ICE leadership raising concerns regarding contracted immigration detention facilities, in particular the Aurora facility, and I have raised the issue in relevant committee hearings.

**Defendants' Unlawful Obstruction of July 2025 Oversight Visit**

9. On July 21, 2025, I, along with Representative Thompson and Representative Raskin, traveled to the ICE Washington Field Office in Chantilly, Virginia, to conduct an unannounced oversight visit.

10. Around 10:00 a.m., we were greeted at the main entrance by a guard, who asked us to wait outside while he conferred with officials inside. After about 15 minutes, a special agent came out. The agent offered to show us the public lobby, and we explained that we required a tour of the entire facility. He asked if we had made prior arrangements, and our group explained that we were not required to do so by law and had not done so. He wrote down each of our names, said that he would have to confer with management, and went inside.

11. About 15 minutes later, the deputy field office director and assistant field office director greeted us. They told us that their "latest guidance" was that field offices are not subject to section 527. They directed us to two ICE detention facilities and stated that we could arrange oversight tours at those locations. In response, our group cited the language of section 527, which provides each individual member with the right to conduct an unannounced oversight visit to any DHS facility used to detain or otherwise house noncitizens. Our group expressed our understanding that the Washington Field Office had a holding area where people are detained.

12. The officials confirmed that the Washington Field Office has a "12-hour holding area," where people are detained and not allowed to leave. They stated that the field office generally did not detain individuals overnight, unlike other field offices, because two detention facilities were close by. They confirmed that the Washington Field Office routinely held individuals who are not at liberty to leave, while a decision is made whether to keep them in detention and transfer them to another facility. They stated that they provided meals to the detainees but had no medical personnel on site.

13. While we were there, we observed at least four individuals exit the facility, several of whom were wearing an ankle bracelet and appearing to carry personal belongings in a plastic bag.

14. We left the facility without being able to conduct oversight of the facility. We continue to lack information regarding the conditions of detention at the Washington Field Office because ICE has denied us entry into this facility.

**The Significant, Irreparable Harm from Defendants' Unlawful Obstruction**

15. In-person, unannounced visits are essential to my ability to conduct oversight of DHS and ICE. I depend on ICE facility oversight visits to guide my ability to shape both substantive legislation and appropriations bills. Oversight visits for myself as a member and my staff provide necessary information on how to best craft legislation, allocate funds through the appropriations process, place conditions on funding through the appropriation process, and ensure humane and legal treatment of staff and detainees within the facilities.

16. Inadequate access to DHS facilities would significantly hinder my ability to engage in oversight. Agency reporting on conditions within facilities is often inadequate and incomplete, and it is important to have the ability to observe conditions firsthand and without notice when necessary.

17. Conditions in DHS facilities are of direct and significant interest to many of my constituents. Residents of my district have been held in those facilities, and others have family members who have been detained there. My office has received countless complaints from constituents about ICE facilities and alleged inhumane treatment and civil rights violations. It is therefore critical that I have the ability to conduct direct oversight to obtain accurate information and inform my constituents on those conditions when necessary.

18. I intend to continue engaging in on-the-ground, real-time oversight of DHS facilities detaining or otherwise housing noncitizens, because timely and accurate information is critical for me to do my work to craft legislation and otherwise serve my constituents.

19. Expeditious and complete access to these facilities is essential to my ability to see the conditions for myself and to advocate, within the Congress and with DHS and ICE, for safe and

humane treatment of detainees there. Defendants' refusal to permit me to visit detention facilities such as the Washington Field Office hinders my ability to perform my duties as a member of Congress. Without adequate oversight, I am less able to serve my constituents, to ensure that DHS and ICE are acting consistently with the law, and to craft relevant legislation and appropriations—including limits on such appropriations—going forward.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 6th day of August 2025 in Lafayette, Colorado.

*[Signature]*
JOE NEGUSE