UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE NEGUSE, in his official capacity as a Member of the U.S. House of Representatives, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | Case No. 25-cv-2463 (JMC) |

### ORDER

Before the Court is Plaintiffs' motion for an order to show cause.[1] ECF 40. Plaintiffs ask the Court to issue an order finding that the seven-day notice policy for congressional visits imposed by Defendant Secretary of Homeland Security Kristi Noem in her January 8, 2026 memorandum, *see* ECF 39-1, represents a violation of the Court's December 17, 2025 memorandum opinion and order, ECF 36; ECF 37.[2] Plaintiffs also ask this Court to enjoin Defendants from "implementing, giving effect to, or otherwise enforcing the requirement set forth in the [January 8] memorandum." ECF 43-1 at 2. The Court's prior opinion had found that a substantively similar policy announced in June 2025 was likely contrary to the terms of Section 527, a limitations rider attached to the

---

[1] In addition, the Court has considered Plaintiffs' proposed order, ECF 43-1, Defendants' notice and accompanying materials, ECF 42, the arguments of counsel at the emergency hearing held on January 14, 2026, and the Parties' supplemental memoranda as requested by the Court, ECF 44; ECF 45.

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this order, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

Department of Homeland Security's (DHS) annual appropriated funds, and that the June 2025 notice requirement had been "promulgated with Section 527 funds" and "continue[d] to be implemented and enforced through the use of Section 527 funds." ECF 36 at 56–58, 72. The Court accordingly issued an order under 5 U.S.C. § 705 staying the "effective date[] of implementation and enforcement" of the seven-day notice requirement. ECF 37. Plaintiffs argue that Defendants' new policy is prohibited by the terms of the December 17 order. *See* ECF 44 at 14–17.

Plaintiffs' motion is **DENIED**. ECF 40. Plaintiffs use the wrong procedural vehicle to challenge the January 8, 2026 memorandum and policy announced therein, which is a new agency action not subject to the Court's prior stay order. The Court's stay order was directed towards Defendants' oversight visit policies as announced in June 2025 and did not purport to address all future DHS policies which may implicate congressional access to Immigration and Customs Enforcement (ICE) facilities. *See* ECF 37 ("postpon[ing] and stay[ing]" the "effective dates of implementation and enforcement of" specifically the "challenged Oversight Visit Policies" from June 2025). The Court's opinion found that the unlawfulness of the notice requirement arose from the "limitation on the use of funding contained in Section 527," and the fact that the seven-day notice requirement as announced in June 2025 was promulgated, implemented, and enforced through the use of Section 527 funds. ECF 36 at 72. However, the Court also acknowledged DHS's claims that it had access to additional funds that were not subject to Section 527's limitations, such as those provided to DHS in the July 2025 reconciliation bill. ECF 36 at 9; *see* One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, tit. X, § 100052, 139 Stat. 72, 387–89 (2025). While the Court did not have the occasion to address whether the June 2025 notice policy would be permissible if promulgated and implemented using *only* OBBBA funds—given that Defendants had conceded that, prior to the Court's order, Section 527 funds were in fact being used to

2

implement the notice requirement, ECF 34 at 1–2—the Court's order did not foreclose Defendants from "'deal[ing] with the problem afresh' by taking *new* agency action" that was consistent with the legal principles as articulated in the Court's opinion. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947)).

Indeed, Defendants' new policy differs facially from the one announced in June 2025. The January 8, 2026 memorandum instructs DHS officials to implement and enforce the notice requirement solely with OBBBA funds.[3] ECF 39-1 at 2. The Court's stay does not reach the policy as stated in the January 8 memorandum, which "did not exist at the time that this Court issued the stay and which Plaintiff[s'] complaint did not challenge." *See Asylum Seeker Advoc. Project v. U.S. Citizenship & Immigr. Servs.*, No. 25-cv-3299 (D. Md. Jan. 13, 2026), ECF 70.

Plaintiffs seize on this Court's statement in its opinion that a stay of the challenged policies from June 2025 was proper "[u]nless and until Defendants show that no Section 527 funds are being used for" the purposes of promulgating, implementing, and enforcing those policies, ECF 36 at 72, as grounds for the Court to require Defendants to affirmatively show that their new policy is consistent with the Court's prior opinion, *see* ECF 43-1 at 2 (requesting this court enjoin Defendants from enforcing the January 8, 2026 policy "unless and until Defendants demonstrate to this Court with particularity that no [S]ection 527 funds were or will be used to create, promulgate, implement, and enforce such policy or requirement"). Plaintiffs overread the quoted section of the Court's prior opinion. The Court's statements sought to articulate why the challenged policies were likely contrary to law and why a stay of those specific policies was appropriate—

---

[3] The January 8, 2026 version of the seven-day notice policy also appears to differ from the one announced in June 2025 in that the January 8 memorandum includes an articulated rationale for the policy—"to ensure adequate protection for Members of Congress, congressional staff, detainees, and ICE employees alike," which did not appear on the face of the notice policy as originally posted on ICE's website in June 2025. *Compare* ECF 39-1 at 2, *with Office of Congressional Relations*, ICE, https://perma.cc/P6XD-4HNV.

again, the June 2025 policies appeared to have been promulgated, implemented, and enforced with Section 527 funds. The quoted language, which does not appear in the Court's order, was not purporting to imply that all future efforts by Defendants to institute a notice requirement for visiting ICE facilities—especially those qualifying as new agency action—were to be handled through the show-cause mechanism proposed by Plaintiffs. Of course, the Court has no doubt that it has the ability to "enforce its own orders" if Defendants were to be found in violation of them, including the terms of an order staying agency action under Section 705 of the Administrative Procedure Act. ECF 44 at 13; *see* 5 U.S.C. § 705 (permitting a court to "issue all necessary and appropriate process to . . . preserve status or rights pending conclusion of the review proceedings").

The Court emphasizes that it denies Plaintiffs' motion only because it is not the proper avenue to challenge Defendants' January 8, 2026 memorandum and the policy stated therein, rather than based on any kind of finding that the policy is lawful. Defendants' new policy must comply with all relevant law, including the Administrative Procedure Act, Section 527, and the terms of the OBBBA. If Plaintiffs wish to challenge the legality of a new agency action, Plaintiffs may seek leave to amend their complaint or file a supplemental pleading, *see* Fed. R. Civ. P. 15, which could also be accompanied by a request for a temporary restraining order or other preliminary relief.

Accordingly, Plaintiffs' motion for an order to show cause, ECF 40, is **DENIED**.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: January 19, 2026