# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOE NEGUSE, in his official capacity as a
Member of the U.S. House of
Representatives, *et al.*,

     *Plaintiffs*

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

     *Defendants*

No. 25-cv-2463-JMC

## DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO SECTION 705 STAY

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

LEGAL STANDARD....................................................................................................... 3

ARGUMENT .................................................................................................................. 4

I.      The Four Factors Weigh Against a Section 705 Stay ....................................... 4

        A.      Plaintiffs Are Unlikely to Succeed on the Merits .................................. 4

                1.      The February 2 Memorandum Further Shows That Plaintiffs Are
                        Unlikely to Succeed on the Merits............................................ 5

                2.      Plaintiffs Are Not Likely to Succeed in Showing That Defendants'
                        New Policy Violates Section 527 Restrictions ........................... 6

                3.      Plaintiffs Are Unlikey to Suceed in Showing That Defendants'
                        Accounting Practices Are Contrary to Law ............................... 8

        B.      Plaintiffs Have Not Shown That They Would Suffer Irreparable Harm
                Absent a Stay ...................................................................................... 10

        C.      The Public Interest and Balance of Equities Weigh Against Issuing a Stay ........ 11

II.     Any Relief Under Section 705 Should Be Limited ......................................... 11

III.    The Court Should Issue a Stay Pending Appeal ............................................. 12

CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Barrow v. Graham*,
  124 F. Supp. 2d 714 (D.D.C. 2000) ......................................................................... 2

*Bill Barrett Corp. v. U.S. Dep't of Interior*,
  601 F. Supp. 2d 331 (D.D.C. 2009) ......................................................................... 3

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Martin*,
  961 F.2d 269 (D.C. Cir. 1992) ................................................................................. 7

*Calloway v. District of Columbia*,
  216 F.3d 1 (D.C. Cir. 2000) ..................................................................................... 7

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ........................................................................... 4, 11

*Citizens for Resp. & Ethics in Wash. v. OMB*,
  791 F. Supp. 3d 29 (D.D.C. 2025) ......................................................................... 13

*Coal. for Humane Immigrant Rts. v. Noem*,
  2025 WL 2192986 (D.D.C. Aug. 1, 2025) ............................................................... 4

*District of Columbia v. Trump*,
  No. 25-5418, 2025 WL 3673674 at *11 (D.C. Cir. Dec. 17, 2025) ................. 11, 12

*District of Columbia v. U.S. Dep't of Agric.*,
  444 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................. 3

*Dorsey v. United States*,
  567 U.S. 260 (2012) ................................................................................................. 7

*Everytown for Gun Safety Support Fund v. ATF*,
  984 F.3d 30 (2d Cir. 2020) ...................................................................................... 7

*Fernandez-Vargas v. Gonzales*,
  548 U.S. 30 (2006) ................................................................................................... 9

*Make the Road N.Y. v. Noem*,
  No. 25-5320, 2025 U.S. App. LEXIS 31160 (D.C. Cir. Nov. 22, 2025) (per curiam) .......... 12

*Me. Cmty. Health Options v. United States*,
  590 U.S. 296 (2020) ................................................................................................. 7

*Nat'l Council of Nonprofits v. OMB*,
  763 F. Supp. 3d 13 (D.D.C. 2025) ......................................................................... 13

*Nat'l Treasury Emps, Union v. Trump*,
  No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ................................... 12

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................ 12

*Raines v. Byrd*,
    521 U.S. 811 (1997) ................................................................................. 4

*Sherley v. Sebelius*,
    689 F.3d 776 (D.C. Cir. 2012) ................................................................ 12

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024) ................................................................................ 11

*United States v. Texas*
    144 S. Ct. 797 (2024) .............................................................................. 13

**Statutes**

5 U.S.C. § 705 ............................................................................. 3, 11, 13

One Big Beautiful Bill Act,
    Pub. L. No. 119-21, 139 Stat. 72 (2025) (OBBBA) ................................... 1

The Continuing Appropriations Act, 2026
    Pub. L. No. 119-37, 139 Stat. 495 .......................................................... 3

Further Continuing Appropriations Act, 2026,
    Pub. L. No. 119-75, 140 Stat. 173 (Feb. 3. 2026) ................................. 3, 5

**Other Authorities**

*Comptroller General McCarl to the Secretary of the Navy*,
    3 Comp. Gen. 974, 1924 WL 1196 (June 18, 1924) ................................. 9

H.R. Rep. No. 79-1980 (1946) .................................................................. 11

*In re: Assignment of Losses Incurred by the Library of Congress FEDLINK Revolving Fund*,
    B-301714, 2004 WL 231305 (Comp. Gen. Jan. 30, 2004) ........................ 9

*In re: Nuclear Regulatory Commission*,
    B-248225, 1993 WL 116201 (Comp. Gen. April 6, 1993) ........................ 9

Letter from Hakeem Jeffries and Charles Schumer to Mike Johnson and John Thune
    (Feb. 4, 2026), (February 4 Jeffries and Schumer Letter),
    https://www.democrats.senate.gov/imo/media/doc/leaders_jeffries_and_schumer_
    to_speaker_johnson_and_leader_thune_2.pdf ...................................... 7, 11

*Principles of Federal Appropriations Law* ("Red Book"),
    https://www.gao.gov/legal/appropriations-law/red-book ......................... 10

*Reimbursement for Interagency Services,*
    *B-26220*, 1942 WL 1231 (Comp. Gen. July 29, 1942) ........................................................ 10

*To the Secretary of Commerce,*
    B-136318,1959 WL 1524 (Comp. Gen. April 28, 1959) ........................................................ 9

**Docket**

ECF No. 20 (Defs.' Opposition to Preliminary Injunction)................................................... *passim*

ECF No. 36 (Memorandum Opinion)..................................................................................... *passim*

ECF No. 37 (Stay Order) ........................................................................................................ 1

ECF No. 39-1 (January 8 Memorandum) ............................................................................. 1, 2

ECF No. 42-1 (Mehringer Declaration)................................................................................ 8, 10

ECF No. 46 (January 19, 2026 Order).................................................................................. 2

ECF No. 48 (Motion to File Supplemental Compl.)............................................................. 2

ECF No. 49-2 (Fleischaker Declaration) ............................................................................. 8, 10

ECF No. 50 (Defs.' TRO Opposition) .................................................................................. *passim*

ECF No. 52 (TRO)................................................................................................................. *passim*

Exhibit 1 (February 2 Memorandum) .................................................................................. 3, 5, 6

## INTRODUCTION

Since this Court issued its initial Section 705 stay order on December 17, 2025, staying two Department of Homeland Security (DHS) policies imposing notice requirements on certain congressional visits to U.S. Immigration and Customs Enforcement (ICE) facilities,  ECF No. 37 (Stay Order), DHS has adopted a new policy addressing this Court's conclusion that Section 527-restricted funds were improperly used to implement and enforce notice requirements. *See* ECF No. 39-1 (January 8 Memorandum). DHS has applied the Court's prior statements holding open the possibility that Defendants could adopt a similar policy using non-restricted funds. *See, e.g.*, ECF No. 36 at 72 (Mem. Op.). The Court's most recent decision to issue a temporary restraining order (TRO) suggests that, "based on the record at this preliminary juncture," the Plaintiffs have shown a likelihood of success in challenging the new policy. ECF No. 52 at 4. In opposition to the Plaintiffs' request for a Section 705 stay, Defendants here nonetheless repeat and incorporate by reference all arguments in opposition to the initial Section 705 stay as well as the TRO. *See, e.g.*, ECF Nos. 20 & 50. The Court should deny Plaintiffs' request for a Section 705 stay because they are unlikely to succeed on the merits or to show irreparable harm, and the public interest and balance of the equities weigh in the government's favor. Should the Court be inclined to issue a Section 705 stay, any such relief should be limited to Plaintiffs with standing and no broader than necessary to prevent irreparable injury. Moreover, any such relief should be stayed pending appeal.

## BACKGROUND[1]

On January 8, 2026, Secretary Noem issued a new policy requiring agency personnel to implement and enforce a notice requirement using only non-restricted funds from the One Big Beautiful Bill Act, Pub. L. No. 119-21, 139 Stat. 72 (2025) (OBBBA). *See* January 8

---

[1] Defendants incorporate by reference descriptions of the factual background in their prior briefing. *See* ECF Nos. 20 & 50.

1

Memorandum. Following emergency briefing and a hearing, the Court denied Plaintiffs' motion for an order to show cause, concluding that Plaintiffs had "use[d] the wrong procedural vehicle to challenge the January 8, 2026 memorandum and policy announced therein, which is a new agency action not subject to the Court's prior stay order." Order (Jan. 19, 2026), ECF No. 46 at 2. A week later, Plaintiffs sought leave to amend and supplement their complaint, ECF No. 48, which the Court granted by Minute Order the same day. Plaintiffs simultaneously filed a motion for a temporary restraining order. ECF No. 49. Defendants opposed the motion for a TRO. ECF No. 50 (TRO Opp'n).[2]

On February 2, 2026, this Court entered the TRO, which "temporarily enjoined [Defendants] from enforcing against the Plaintiffs the oversight visit policy as announced on January 8, 2026, or otherwise requiring any Plaintiff to provide advance notice before conducting oversight visits at any facility operated by or for DHS to detain or otherwise house aliens." ECF No. 52 at 9. Having observed that "'[t]he purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has the opportunity to pass on the merits of . . .' Plaintiff's request for a stay of the January 8 policy under Section 705 of the APA," *id.* at 3 (quoting *Barrow v. Graham*, 124 F. Supp. 2d 714, 715-16 (D.D.C. 2000), the Court further provided that the TRO "shall expire in 14 days, subject to any further order from the Court." *Id.* at 9. In the meantime, the Court invited the parties to submit supplemental briefing regarding Plaintiffs' request for a Section 705 stay. *Id.*

Later that same day, after the Court issued its opinion but before Congress passed and the President signed new legislation funding the Department, the Secretary signed a new memorandum

---

[2] While this motion was fully briefed but not yet decided, funding for DHS containing Section 527-restricted appropriations lapsed on January 31, 2026. During this time, DHS still had available OBBBA funds.

concerning Congressional visits. Memorandum for: Todd M. Lyons, Rodney Scott, James H. Percival II, Holly C. Mehringer, From Kristi Noem, "Congressional Access to Alien Detention Facilities—Ratification of Access Policy and Use of Appropriations for Enforcement" (Feb. 2, 2026), attached as Exhibit 1 (February 2 Memorandum). The February 2 Memorandum extends the January 8 ICE policy to CPB and makes clear that it applies during any lapse in appropriations to which Section 527 applies. *Id.*

On February 3, 2026, the President signed into law H.R. 7148, which funds DHS through February 13, 2026. *See* Further Continuing Appropriations Act, 2026, div. H, § 101, Pub. L. No. 119-75, 140 Stat. 173 (Feb. 3. 2026) ("The Continuing Appropriations Act, 2026 (division A of Public Law 119-37) is amended by striking the date specified in section 106(3) and inserting 'February 13, 2026'"). These funds are subject to Section 527. *See, e.g.*, ECF No. 20 at 5-6.

## LEGAL STANDARD

Section 705 of the APA authorizes courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. The court may do so only "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury." *Id.*; *see, e.g.*, *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 336 n.7 (D.D.C. 2009) (plaintiff's "failure to establish irreparable harm is also fatal to [its] request for relief under Section 705 of the APA").

The same factors for issuing a temporary restraining order or preliminary injunction also govern the availability of a stay under the APA, 5 U.S.C. § 705. *See District of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020) (collecting authorities); ECF No. 36 at 16-17. Accordingly, to prevail on a motion for a Section 705 stay, the plaintiffs "must show (1) a substantial likelihood of success on the merits, (2) that [they] would suffer irreparable injury if the [stay] were not granted, (3) that a[] [stay] would not substantially injure other interested parties,

and (4) that the public interest would be furthered by the [stay]." *Coal. for Humane Immigrant Rts. v. Noem*, 2025 WL 2192986, at *12 (D.D.C. Aug. 1, 2025) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)), *appeal filed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025). "In a case like this one, where the Government is the non-movant, the third and fourth factors merge." *Id.*

## ARGUMENT[3]

As demonstrated in prior briefing and below, the Court should deny the Plaintiffs' request for a Section 705 stay. Plaintiffs are unlikely to succeed on the merits and have failed to show irreparable harm, and the public interest and balance of the equities weigh in the government's favor. Should the Court be inclined to issue a Section 705 stay, any such relief should be no broader than necessary to prevent irreparable injury, limited to Plaintiffs with standing, and stayed pending appeal.

### I.    The Four Factors Weigh Against a Section 705 Stay

#### A.    Plaintiffs Are Unlikely to Succeed on the Merits

Plaintiffs are unlikely to succeed on the merits because they lack standing and a cause of action, and because the January 8 Memorandum is not contrary to law or in excess of statutory authority, nor is it arbitrary and capricious. Defendants reassert and reincorporate all arguments from their prior memoranda filed in this case. *See, e.g.*, ECF Nos. 20 & 50. Without restating the argument in detail here, Defendants emphasize that Plaintiffs lack standing because they have suffered alleged harm only in their capacity as Members of Congress attempting to exercise a political benefit that attaches to the seats those Members hold. *See Raines v. Byrd*, 521 U.S. 811,

---

[3] Defendants incorporate by reference their prior arguments in earlier briefing; the arguments in this supplemental brief will focus on Defendants' opposition to Plaintiffs' pending request for a Section 705 stay of the January 8 policy. *See* ECF Nos. 20 & 50.

829 (1997); ECF No. 50 at 7. This Court declined to address at this stage Plaintiffs' arguments that the January 8 policy is arbitrary and capricious. ECF No. 52 at 3 n.1. Plaintiffs are also unlikely to succeed on the merits of this claim because Defendants engaged in reasoned decisionmaking when adopting the January 8 Memorandum. *See, e.g.*, ECF No. 50 at 20-24. For purposes of this supplemental brief, Defendants specifically respond to the Court's February 2 Order to show why the Court should deny the Plaintiffs' request for a Section 705 stay. *See* ECF No. 52 at 9.

**1. The February 2 Memorandum Further Shows That Plaintiffs Are Unlikely to Succeed on the Merits**

The February 2 Memorandum shows that Plaintiffs are unlikely to succeed on the merits. *See* Exhibit 1. In the Stay Order, the Court stayed Defendants' original policies on the grounds that the record indicated that those policies were promulgated and enforced using restricted funds. ECF No. 36 at 58-59. In the February 2 TRO, the Court found on the record before it that "Plaintiffs have made a strong showing that the January 8, 2026, notice requirement was also promulgated, implemented, and is presently being enforced with the use of Section 527 funds." ECF No. 52 at 5. Later that same day, Defendants addressed the Court's concerns with respect to the policy's promulgation through the issuance of a new memorandum signed by Secretary Noem, in response to the lapse of appropriations subject to Section 527. The February 2 Memorandum observes that "the appropriations containing Section 527(b) lapsed on January 31, 2026." Exhibit 1. It continues: "As a result of the lapse, Section 527 is not currently in effect.  Therefore, as of this date, I am issuing this new policy that is identical in substance to the January 8 access policy." *Id.* This lapse continued through February 3, when the President signed H.R. 7148. *See* Pub. L. No. 119-75.

Having addressed the issue that the Court found with respect to promulgation, Defendants should be entitled to enforce the policy with funds that are not restricted by Section 527.  Consistent with the Court's TRO, however, the February 2 Memorandum states: "The General Counsel will

provide further guidance regarding the effective date of this policy in light of the court's order."
Exhibit 1. Guidance making the policy effective has not yet issued. If the Court's TRO is dissolved,
however, Defendants intend to use unrestricted funds appropriated to DHS under the OBBBA to
implement the policy. Because the new February 2 Memorandum addresses any defect affecting
the promulgation of a congressional access policy and Congress has appropriated funds under the
OBBBA that are not limited by Section 527, Plaintiffs are unlikely to succeed on the merits.

## 2. Plaintiffs Are Not Likely to Succeed in Showing That Defendants' New Policy Violates Section 527 Restrictions

This Court held that "based on the limited record before the Court at this juncture,"
Plaintiffs have demonstrated "a likelihood of success" with respect to whether Section 527-
restricted funds have been used "to promulgate, implement, and enforce the January 8 notice
policy." ECF No. 52 at 7. Based on Plaintiffs' declaration, the Court reasoned that "at least some
of these resources that either have been or will be used to promulgate and enforce the notice policy
have already been funded and paid for with Section 527-restricted annual appropriations funds,
including pursuant to contracts or agreements that predate the OBBBA." *Id.* The Court thus
concluded that "[t]his likely violation provides sufficient basis to support a temporary restraining
order halting enforcement of the January 8 policy against Plaintiffs even if the limitation rider is
presently inactive." *Id.* at 7-8 n.6. The Court further concluded that "[f]unds used to develop the
very policy which the Court has found prevents Members' entry to covered facilities are properly
considered funds 'used to prevent' entry as contemplated by Section 527." *Id.* at 5.

Defendants disagree. "Even if Section 527 could be read to cover a policymaking process,
and even if Defendants used non-OBBBA funds for that process, the OBBBA necessarily implies
authority to fashion policies that would otherwise be limited by provisions in other appropriation
bills (*i.e.*, Section 527)." ECF No. 50 at 15; *cf. Me. Cmty. Health Options v. United States*, 590

U.S. 296, 314 (2020) (narrowly construing appropriations riders); *Calloway v. District of Columbia*, 216 F.3d 1, 9 (D.C. Cir. 2000) (explaining "very strong presumption" that "appropriations acts" do not "substantively change existing law" and "must be construed narrowly" when they "arguably conflict"); *Bldg. & Constr. Trades Dep't, AFL-CIO v. Martin*, 961 F.2d 269, 273 (D.C. Cir. 1992) (narrowly construing appropriations rider).

As this Court has recognized, the OBBBA "funds are not subject to Section 527's limitations." ECF No. 36 at 9. But Plaintiffs' interpretation of the scope of Section 527 is overly broad because it would effectively apply those restrictions to OBBBA funds despite Congress's decision not to include those restrictions in the OBBBA. *See, e.g.*, ECF No. 50 at 13 (arguing, among other things, that "the plain text of the appropriations rider at issue expressly limits its application to funds in that 'act.'"). Under traditional canons of interpretation, an earlier statute generally "cannot bind a later Congress, which remains free … to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Dorsey v. United States*, 567 U.S. 260, 275 (2012). Other courts have found appropriations riders so repealed or modified. *See, e.g.*, *Everytown for Gun Safety Support Fund v. ATF*, 984 F.3d 30, 34 (2d Cir. 2020); *Bldg. & Constr. Trades Dep't*, 961 F.2d at 274; *see also* Letter from Hakeem Jeffries and Charles Schumer to Mike Johnson and John Thune (Feb. 4, 2026) (writing "with respect to fiscal year 2026 funding for the Department of Homeland Security (DHS)" and proposing "reforms [that] should apply to all federal activity, whether funded by FY26 appropriation, the OBBBA or any other act," reflecting an understanding that a restriction in the next appropriations bill would not automatically affect OBBBA money in the absence of specific legislation to that effect), *available at*

https://www.democrats.senate.gov/imo/media/doc/leaders_jeffries_and_schumer_to_speaker_joh

nson_and_leader_thune_2.pdf  (February 4 Jeffries and Schumer Letter).

Thus, Plaintiffs are unlikely to succeed on the merits of their claim that the use of OBBBA

funds to implement a new policy is nonetheless subject to Section 527 restrictions from a separate,

prior appropriations act.

### 3.  Plaintiffs Are Unlikely to Succeed in Showing That Defendants' Accounting Practices Are Contrary to Law

Plaintiffs are unlikely to succeed in showing that it would be "nearly impossible for ICE to

engage in the tracking and back-end accounting," Fleischaker Declaration, ¶ 23, ECF No. 49-2, as

described in the Mehringer Declaration, ¶ 6, ECF No. 42-1. The parties dispute the level of

granularity necessary for proper accounting, and the Court's TRO decision does not resolve this

legal dispute over the principles to apply in determining cost allocation. For example, the Court

quoted Plaintiffs' suggestion that the appropriations rider might reach all of the above: "salaries,

employees, paper, or buildings," "portions of the salaries of a wide array of DHS and ICE

personnel … likely necessary to devise and enforce the notice policy," "information technology

systems and contracts, office supplies, utilities, and building infrastructure," "pens or papers,"

"compute programs," and "building utilities." ECF No. 52 at 5, 7. This interpretation is overbroad,

however, because it would improperly restrict legislators' ability to enact future unrestricted bills

such as the OBBBA. *See, e.g.*, ECF 50 at 12-13.

Section 527 applies only when funds provided by the annual appropriation are "used" for

certain activities. The Department "uses" funds by incurring new legal obligations that require the

payment of money. The provision is not retroactive, meaning it applies only to new costs and

expenditures, not to costs the Department incurred prior to enactment.  *See e.g. Fernandez-Vargas*

*v. Gonzales*, 548 U.S. 30, 37 (2006) (statutes are presumed not to have retroactive effect absent clear statutory language to the contrary).

Moreover, Defendants disagree with Plaintiffs' contention that it would be impossible for the Department to track the costs associated with the creation and implementation of the policy. Defendants maintain that generally accepted government accounting practices support their position. As noted, Defendants disagree with Plaintiffs' arguments about the scope of section 527. Defendants contend that section 527 applies only to activities that directly prevent the entry to covered facilities – not to various and sundry overhead costs the Department would incur regardless. To the extent the Court disagrees with Defendants' position, however, the Department maintains that it has the ability to recover all of the actual costs of implementing its policies, to include overhead costs.

In transactions where one federal appropriation must reimburse another, an agency complies with its responsibility to reimburse for the actual costs of a transaction by using a reasonable and appropriate methodology to determine costs. *See e.g. Comptroller General McCarl to the Secretary of the Navy*, 3 Comp. Gen. 974, 1924 WL 1196 (June 18, 1924). Actual costs for a reimbursable transaction between appropriations can include those indirect or overhead costs that are proportionally allocable to the transaction. *See e.g. In re: Assignment of Losses Incurred by the Library of Congress FEDLINK Revolving Fund*, B-301714, 2004 WL 231305 (Comp. Gen. Jan. 30, 2004). Indirect costs are costs that are incurred for a common or joint purpose benefiting more than one appropriation, and they are not readily assignable to one appropriation or the other without unreasonable or costly effort. Indirect costs can be assigned using any reasonable method. *See e.g. In re: Nuclear Regulatory Commission*, B-248225, 1993 WL 116201 (Comp. Gen. April 6, 1993); *To the Secretary of Commerce*, B-136318, 1959 WL 1524 (Comp. Gen. April 28, 1959);

*Reimbursement for Interagency Services*, B-26220, 1942 WL 1231 (Comp. Gen. July 29, 1942).

Accordingly, if the Court is inclined to grant relief, the Court should not issue a Section 705 stay

but rather limit any relief to requiring Defendants to use a reasonable methodology to capture those

costs.

Finally, the GAO Red Book supports Defendants' position that "the Department can adjust

its accounting ledgers to ensure that these costs are properly recorded against an available, and

appropriate, H.R. 1 appropriation." Mehringer Declaration, ¶ 6, ECF No. 42-1. The Redbook

provides:

> A related concept is the allocation of obligations for administrative expenses (utility
> costs, computer services, etc.) between or among programs funded under separate
> appropriations. There is no rule or formula for this allocation apart from the general
> prescription that the agency must use a supportable methodology. Merely relying
> on the approved budget is not sufficient. *See* GAO, Financial Management:
> Improvements Needed in OSMRE's Method of Allocating Obligations,
> GAO/AFMD-89-89 (Washington, D.C.: July 28, 1989). An agency may initially
> charge common-use items to a single appropriation as long as it makes the
> appropriate adjustments from other benefiting appropriations before or as of the
> end of the fiscal year. 31 U.S.C. § 1534; 70 Comp. Gen. 601 (1991). The allocation
> must be in proportion to the benefit. 70 Comp. Gen. 592 (1991).

*Principles of Federal Appropriations Law* ("Red Book") at 7-9, available at

https://www.gao.gov/legal/appropriations-law/red-book. Accordingly, Plaintiffs are unlikely to

succeed in showing that Defendants' accounting practices for allocating costs are contrary to law.

*See, e.g.*, ECF No. 39-1; ECF No. 42-1.

**B.    Plaintiffs Have Not Shown That They Would Suffer Irreparable Harm Absent
a Stay**

In granting the TRO, this Court relied upon its previous decision "that the policy imposes

irreparable harm upon the Plaintiffs in denying them the ability to carry out timely oversight of

covered facilities." ECF No. 52 at 7 (citing ECF No. 36 at 66-69). Defendants incorporate by

reference their prior arguments, ECF No. 20 at 38-40; ECF No. 50 at 24-25, showing that Plaintiffs

have not met their burden to establish that "[t]he injury complained of [must be] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm" and "beyond remediation." *Chaplaincy of Full Gospel Churches,* 454 F.3d at 297. In addition, Plaintiffs continue to have alternative adequate remedies available, including through the ongoing negotiations of DHS appropriations. *See, e.g.*, February 4 Jeffries and Schumer Letter.

C.    **The Public Interest and Balance of Equities Weigh Against Issuing a Stay**

The public interest and balance of equities weigh against issuing a Section 705 stay. *Cf.* ECF No. 52 at 7 (stating simply that "as before, the public interest and the balance of equitable considerations weigh strongly in favor of granting Plaintiffs the limited preliminary relief of a temporary restraining order."). The public interest lies, however, in implementing the January 8 policy, which includes among its goals the safety of DHS personnel and members of Congress during Congressional visits at DHS facilities. *See, e.g.*, ECF No. 50 at 21-22; *District of Columbia v. Trump*, No. 25-5418, 2025 WL 3673674 at *11 (D.C. Cir. Dec. 17, 2025) (recognizing "the strong federal interest in the protection of federal functions and property"); *see also* ECF No. 20 at 41-42.

II.    **Any Relief Under Section 705 Should Be Limited**

The Court should limit any stay to the Plaintiffs. ECF No. 20 at 43-45. Section 705 provides that courts may delay the effective date of an agency action only "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705; *see also, e.g.*, H.R. Rep. No. 79-1980, at 277 (1946) (explaining that this relief "is equitable"). The Supreme Court recently held that "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024). Defendants acknowledge that the Court previously disagreed with their arguments in favor of thus limiting relief, ECF No. 36 at 72-73, but respectfully request

that the Court revisit the scope of relief available under Section 705. *See, e.g.*, *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012) (discussing possibility that a court may revisit at a later stage in litigation an issue raised in the context of a motion for preliminary relief).

## III.    The Court Should Issue a Stay Pending Appeal

The Court should stay the effective date of any relief granted pending appeal. Although this Court's TRO decision held that it would be "premature to rule on a stay pending appeal given that this temporary restraining order is not appealable," ECF No. 52 at 8, the Court should issue a stay pending appeal in the event the Court now were to issue a Section 705 stay. *Make the Road N.Y. v. Noem*, No. 25-5320, 2025 U.S. App. LEXIS 31160, at *12 (D.C. Cir. Nov. 22, 2025) (per curiam) (applying *Nken* standard to grant partial stay pending appeal of a Section 705 stay order); *District of Columbia*, 2025 WL 3673674, at *6. In considering a stay pending appeal, the Court must examine: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Defendants reiterate that they would suffer irreparable harm absent a stay. ECF No. 50 at 27-28; *see also, e.g.*, *Nat'l Treasury Emps, Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *2 (D.C. Cir. May 16, 2025) (granting stay pending appeal where the district court's injunction impeded Executive power). The equitable factors likewise weigh in Defendants' favor, and the public interest and balance of equities factors merge where, as here, relief is sought against the government. *Nken*, 556 U.S. at 435. This balance weighs in Defendants' favor because any injunctive relief would preclude effectuation of an Executive policy issued pursuant to authority afforded by Congress. ECF No. 50 at 25-28.

Alternatively, the Court should issue an administrative stay while the parties address the issuance of stay pending appeal. *Citizens for Resp. & Ethics in Wash. v. OMB*, 791 F. Supp. 3d 29, 60 (D.D.C. 2025), *appeal filed*, No. 25-5266 (D.C. Cir. July 23, 2025). A court may issue a brief "administrative stay" to "buy[] the court time to deliberate when issues are not easy to evaluate in haste." *Nat'l Council of Nonprofits v. OMB*, 763 F. Supp. 3d 13, 16-17 (D.D.C. 2025) (quoting *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (mem.) (Barrett, J. concurring) (cleaned up)). An administrative stay of any injunctive relief would be warranted to allow the parties time to address more fully whether the Court's decision to issue a Section 705 stay should, itself, be stayed pending appeal.

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Plaintiffs' motion for a stay under 5 U.S.C. § 705, or, in the alternative, stay the effective date of any such relief pending appeal.

13

Dated: February 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Amber Richer*
AMBER RICHER (CA Bar No. 253918)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Ph: (202) 514-3489
Email: amber.richer@usdoj.gov

*Counsel for Defendants*

14