**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOE NEGUSE, in his capacity as a Member of
the U.S. House of Representatives, *et al.*,

      *Plaintiffs*,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT *et al.*,

      *Defendants.*

Case No. 25-cv-2463-JMC

**PLAINTIFFS' MOTION TO COMPEL THE ADMINISTRATIVE RECORD AND
PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR A STAY**

Defendants ask to be retroactively excused from long-passed deadlines to file a responsive pleading and to produce the administrative record. They offer no justification for their failure to comply with this Court's deadlines or explanation for their delay in seeking relief. Plaintiffs nonetheless agree that in light of the pendency of Defendants' appeal from this Court's order granting interim relief, judicial efficiency supports Defendants' belated request for a stay of their deadline for responding to the complaint. But the same logic does not extend to the obligation to produce the administrative record, the scope of which will not be informed by the ongoing appellate proceedings. Timely production of the administrative record will facilitate more efficient proceedings in this Court once appellate review is completed.

The need for timely production of the administrative record is underscored by the fact that Plaintiffs were not granted all of the interim relief they sought and may wish to seek additional relief. This is particularly true in light of Defendants' continued obstruction of Plaintiffs' attempts to exercise their oversight functions at immigration detention facilities. The record underlying the

challenged oversight visit policies would inform Plaintiffs' decisions on whether and how to seek further relief from this Court.

Accordingly, Defendants' motion should be denied, except to the extent that Defendants request a belated stay of the deadline to respond to the complaint. Correspondingly, Plaintiffs respectfully request that the Court compel production of the overdue administrative record and require that production be made by August 13, 2026.[1]

## BACKGROUND

Plaintiffs filed the original complaint in this case on July 30, 2025, challenging the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) oversight visit policy promulgated in June 2025. ECF No. 1. Plaintiffs' complaint asserted, *inter alia*, several claims under the Administrative Procedure Act (APA). Under Federal Rule of Civil Procedure 12(a)(3), Defendants' answer was due by September 29, and under Local Rule 7(n)(1), the administrative record for the June 2025 policy would have been due no later than October 29. Defendants missed both of those deadlines without seeking an extension.

On December 17, the Court granted Plaintiffs' first motion for a stay under 5 U.S.C. § 705. ECF Nos. 36, 37. Three weeks later, on January 8, 2026, Defendants promulgated a substantially similar oversight visit policy. ECF No. 39-1. On January 26, Plaintiffs filed an amended and supplemental complaint challenging both the June and January policies, again including multiple claims under the APA, and moved for a stay of the January policy. ECF No. 53.

On March 2, the Court granted Plaintiffs' second motion for a stay under section 705. ECF Nos. 61, 62. Defendants' appeal from that order remains pending; briefing in the D.C. Circuit is scheduled to conclude on August 21.

---

[1] Counsel for Plaintiffs conferred with counsel for Defendants, who advised that Defendants oppose the motion to compel. *See* Local Rule 7(m).

Under Federal Rule of Civil Procedure 15(a)(3), Defendants' answer to the operative complaint was due by February 9, and under Local Rule 7(n)(1), the administrative record for the January 2026 policy would have been due no later than March 11. Defendants again missed those deadlines without seeking an extension.

On June 10, counsel for Plaintiffs emailed counsel for Defendants to inform them that the answer and administrative record deadlines had passed months earlier, and Plaintiffs' counsel sought to discuss a schedule for production of the administrative record.[2] Counsel for both parties conferred over video call the following day, and—after some negotiation—Defendants' counsel indicated that, subject to the agency's agreement, they could likely consent to producing the record for the January 2026 policy within 30 days, in exchange for Plaintiffs' agreement to extending the answer deadline until after summary judgment. Defendants' counsel confirmed by email on June 12 that he had transmitted the proposal to DHS and hoped to memorialize an agreement the following week.

After multiple follow-up emails, on the evening of June 24, Plaintiffs' counsel reaffirmed their desire to avoid adversarial briefing but stated that if the parties did not reach an agreement by the end of that week, Plaintiffs planned to move to compel production of the administration record. On June 25—two weeks after the parties conferred over a joint scheduling proposal—Defendants' counsel informed Plaintiffs that Defendants would be moving to stay all proceedings that same day and asked that Plaintiffs provide their position on that motion in less than 3.5 hours.

Defendants' failure to engage in the meet-and-conferral process is reason enough to deny their motion. *See, e.g.*, *Steele v. United States*, No. 14-cv-1523-RCL, 2023 WL 6215790, at *3 (D.D.C. Sept. 25, 2023) (collecting cases). Even so, Plaintiffs do not oppose the request to stay Defendants' answer deadline until after the disposition of Defendants' interlocutory appeal. In the interim, in the

---

[2] The emails described herein are attached as Exhibit 1.

interest of preserving judicial and party resources, Plaintiffs will not pursue summary judgment on the claims in the operative complaint while the appeal remains pending. But, for the reasons set forth below, Plaintiffs seek production of the administrative record by August 13, 2026.

## ARGUMENT

Under Local Rule 7(n)(1), Defendants were required to "file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." The administrative record for an agency action "includes all materials compiled by the agency that were before the agency at the time the decision was made." *Hecht ex rel. James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (cleaned up).

Here, the administrative record for the June 2025 and January 2026 policies was due no later than March 11, 2026—nearly four months ago. Defendants offer no excuse for their failure to file responsive pleadings to Plaintiffs' complaints (both of which were due well before Defendants filed their interlocutory appeal) and to file, simultaneously or within 30 days, a certified index of the administrative record. Nonetheless, Plaintiffs do not oppose a stay of Defendants' obligation to respond to the operative complaint at this time. But the administrative record is another matter altogether: that has immediate importance to Plaintiffs' further prosecution of this lawsuit and will not be informed by the appellate proceedings. The Court should therefore order Defendants to produce the administrative record for both the June 2025 policy and January 2026 policy by August 13.

Good cause supports Plaintiffs' request. First, the administrative record is necessary at this stage to inform Plaintiffs' decisions regarding additional relief in this case. Plaintiffs did not obtain all of the relief they sought in their motion for preliminary relief. Specifically, Plaintiffs requested broader preliminary relief to prevent Defendants from further obstructing Plaintiffs' oversight visits,

4

including by blocking Plaintiffs from speaking with detainees during such visits. *See, e.g.*, Pls.' Mot. for TRO at 41 (Jan. 26, 2026), ECF No. 49-1 (arguing that ICE's procedures preventing Plaintiffs from speaking with detainees during visits are arbitrary and capricious); Pls.' Suppl. Reply at 10–13 (Feb. 11, 2026), ECF No. 57 (arguing for broader relief under section 705); Mem. Op. at 13 n.3 (Mar. 2, 2026), ECF No. 61 (declining to address Plaintiffs' arbitrary-and-capricious claim, including with respect to the detainee-contact procedures).

In the months following the Court's section 705 stay orders, DHS and ICE have continued to obstruct and otherwise evade oversight of immigration detention facilities by Plaintiffs in ways that run afoul of the oversight rider (currently section 546, *see* Homeland Security and Further Additional Continuing Appropriations Act, 2026, Pub. L. No. 119-86, div. A, tit. V, § 546, 140 Stat. 773, 808 (2026)). For example, on June 1, 2026, Plaintiff Representative Gomez was denied entry to the Adelanto Desert View Annex facility. Third Decl. of Rep. Jimmy Gomez ¶¶ 3–8. The facility personnel who met Representative Gomez at the door did not let him enter to conduct an unannounced oversight visit. *Id.* ¶ 5. After conferring over the phone with the ICE Office of Congressional Relations, the facility staff reaffirmed the denial of entry. *Id.* ¶ 6. The personnel stated that Representative Gomez had "used up his 90 minutes," because he had visited a different facility, the Adelanto West Annex, in a scheduled oversight visit earlier that day. *Id.* Obtaining the administrative record would allow Plaintiffs to determine whether a purported 90-minute daily maximum is encompassed within the policies that Plaintiffs are challenging, which would inform appropriate next steps—including whether and how Plaintiffs will seek further relief from this Court.

Defendants have also continued to obstruct Plaintiffs' oversight by seemingly prohibiting agency personnel on the ground from answering questions during oversight visits and making it all but impossible for members to speak with detainees. *See, e.g.*, Third Decl. of Rep. Jason Crow ¶¶ 7–

14 & Ex. A. In an escalation of this obstruction, on May 11, 2026, then–Acting ICE Director Todd Lyons issued a memorandum to all agency personnel instructing that "ICE will now only facilitate meetings with detainees during congressional visits if those [noncitizens] are specifically identified by the requesting office to ICE OCR by name, in a manner consistent with existing ICE policy, which requires detainee meeting requests be made at least two (2) business days prior to the visit." Mem. from Acting Dir. Lyons, *Restoring Order and Integrity to Congressional Visits to Detention Facilities* 3 (May 11, 2026) ("Lyons Mem.") (attached as Ex. 2).[3] The memorandum further instructs that the congressional office making the advance request "must also submit valid proof of the [noncitizen's] consent to the meeting, such as a signed ICE Form 60-001." *Id.* This directly undermines the protections of the oversight rider by requiring that members of Congress (and their staff) provide at least two days' notice of oversight visits if they wish to speak to any detainees—including their own constituents or constituents' family members.[4] And even if they provide that notice, they generally have no way to obtain an individual detainee's consent ahead of time without the agency's facilitation. *See, e.g.*, Pls.' Mot. for TRO at 41; Third Crow Decl. ¶¶ 12–14.

These practically insurmountable procedural hurdles—combined with facility personnel's refusal to answer inquiries during oversight visits—severely hinder Plaintiffs' ability to obtain the on-the-ground information to which the oversight rider entitles them. Again, the administrative record will inform Plaintiffs' next steps, by providing a better understanding of what DHS considered in developing the challenged policies, including the ways in which DHS understands (or

---

[3] The Lyons memorandum casts gratuitous aspersions on congressional oversight efforts, including several inaccurate statements of both fact and law, which Plaintiffs do not address herein.

[4] Notably, the memorandum states that "congressional members and staff may meet with detainees . . . during each ICE facility's general visitation hours," during which "detainees are able to meet with friends, family, religious leaders, or any other individual with whom they wish to meet." Lyons Mem. at 2. But the memorandum itself does not confine the policy regarding congressional visits to hours *outside of* normal visitation hours. As a result, any member who conducts an oversight visit during "visitation hours" at an ICE facility but is not permitted to speak with detainees during that visit is treated worse than "any other individual."

misunderstands) the language of the oversight rider to limit its obstruction efforts. In particular, the record would help clarify exactly what the challenged policies encompass and to what extent Defendants' recent obstructions are either part of the challenged oversight visit policies—*i.e.*, "existing ICE policy," as Lyons stated in his memorandum, Lyons Mem. at 3—or new policies altogether.

Finally, production of the administrative record at this stage is appropriate for the additional reason that the Court has already determined that Plaintiffs likely have standing to bring this action, preliminarily rejected Defendants' other jurisdictional arguments, and held that Plaintiffs are likely to succeed on the merits of their claims that the oversight visit policies are contrary to law. For the same reasons, the D.C. Circuit—which already denied Defendants' requests for an administrative stay and stay pending appeal—is likely to affirm. Defendants could have moved to dismiss this lawsuit on jurisdictional grounds but chose not to; they should not be excused from their obligation to produce the administrative record in the interim.

Plaintiffs seek production of the administrative record within a reasonable period of time, and Defendants cannot fairly claim to be prejudiced by this request now. This APA case was filed nearly a year ago, and DHS and ICE were well aware of their impending obligation to compile and produce an administrative record when this litigation commenced. Defendants missed both of their responsive pleading deadlines, and Plaintiffs raised this issue with them directly first, in the interest of preserving party and court resources, three weeks ago. And Defendants can hardly assert that compiling the administrative record for the January 2026 policy—if it is not already compiled—will take significant time or resources, in light of the policy's apparent rapid development in the three weeks following this Court's December 17 stay order. Similarly, there is every indication that the June 2025 policy was developed in a matter of a few weeks at most. *See* Pls.' Mot. for Stay at 35 (Aug. 8, 2025), ECF No. 17-1 (describing multiple swift changes in ICE's position towards

congressional oversight visits in the weeks preceding promulgation of the challenged June 2025 oversight visit policy). Plaintiffs seek production by August 13—more than the 30 days that the local rules provide by default, and there is no evidence suggesting that production of the administrative record would reasonably require even more time.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motion except to the extent that it seeks a stay of the deadline for responding to the complaint and order Defendants to produce the administrative record for both the June 2025 and January 2026 policies no later than August 13, 2026.

July 1, 2026

Respectfully submitted,

*/s/ Christine L. Coogle*
Christine L. Coogle (D.C. Bar No. 1738913)
Lisa Newman (TX Bar No. 24107878)
Joshua M. Salzman (D.C. Bar No. 982239)
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Brian D. Netter (D.C. Bar No. 979362)
Josephine T. Morse (D.C. Bar No. 1531317)
Skye L. Perryman (D.C. Bar No. 984573)

DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 445-4939
ccoogle@democracyforward.org

Daniel Martinez
D.C. Bar No. 90025922
Katherine M. Anthony
D.C. Bar No. 1630524

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-2465
danny.martinez@americanoversight.org

*Counsel for Plaintiffs*

8