**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOE NEGUSE, in his official capacity as a Member of the U.S. House of Representatives, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT *et al.*, <br><br> *Defendants.* | Case No. 25-cv-2463-JMC |

**DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR STAY OF
DISTRICT COURT PROCEEDINGS PENDING APPEAL AND OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs acknowledge (as they must) that a partial stay of district court proceedings pending

appeal is warranted, acquiescing to Defendants' request for a stay of their deadline for responding to

the complaint as supported by "judicial efficiency." *See* Pls.' Mot. to Compel and Partial Opp.

("Opp.") at 1, ECF No. 68. Plaintiffs err, however, in seeking to nonetheless compel production of

an administrative record so as to enable further proceedings in this Court. For the reasons Defendants

provided in their Motion for Stay, ECF No. 67 ("Mot."), a stay would preserve judicial and party

resources by allowing the D.C. Circuit and, if necessary, the Supreme Court to provide controlling

instruction on the very issues presented in this case. And such a stay would not prejudice Plaintiffs,

who remain both protected by the preliminary relief that this Court already provided and free to file

a new lawsuit to challenge other policies that purportedly aggrieve them.

**ARGUMENT**

Plaintiffs do not contest two of the three factors that courts in this District consider when

deciding whether to stay district court proceedings: "the moving party's need for a stay—that is the

harm to the moving party if a stay does not issue; and . . . whether a stay would promote efficient use of the court's resources." *National PFAS Contamination Coalition v. U.S. EPA*, 2023 WL 22078, at *3 (D.D.C. Jan. 3, 2023); *see also* Defs.' Mot. 3. For the reasons Defendants provided, both of those factors strongly support a stay here. *See* Defs.' Mot. 3-4. To start, further district court proceedings would require the expenditure of scarce government resources litigating a dispute over which an appellate court may decide this Court lacks jurisdiction. *Id.* And because a final appellate decision on Defendants' appeal will be controlling or, at a minimum, highly instructive for this Court, judicial resources would be best preserved by a full stay, as courts in this District and elsewhere have recognized in routinely granting similar stays. *See Id.* at 4.

Indeed, Plaintiffs' simultaneous motion to compel production of an administrative record while conceding that the deadline for a responsive pleading should be stayed inverts the sequence adopted by the rules of this District, and undermines the considerations of party and judicial efficiency that justify that rule. Local Civil Rule 7(n)(1) provides that "the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first." But when a party files a threshold dispositive motion, such as a motion to dismiss for lack of subject-matter jurisdiction, "the general practice in this Court" is to waive Local Civil Rule 7(n) as "the administrative record is not necessary for [the court's] decision." *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022); *see also, e.g.*, *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018); *Patterson v. Haaland*, 2022 WL 4534685, at *1 & n.2 (D.D.C. Sept. 28, 2022); *E. Atl. Servs. & Trading LLC v. Mayorkas*, 2024 WL 4332554, at *6 (D.D.C. Sept. 27, 2024). The sequencing imposed by that practice exists for good reason: an agency should not be required to expend scarce resources compiling and certifying an administrative record at the taxpayers' expense when a court lacks subject-matter jurisdiction over a dispute because, for example, the plaintiff lacks Article III standing.

In the normal course, then, Defendants in this action would move to dismiss for lack of subject-matter jurisdiction, and the general practice in this Court would waive application of Local Civil Rule 7(n). But whether federal courts possess subject-matter jurisdiction over suits brought by individual legislators in their official capacities is, of course, the very first issue that the D.C. Circuit and/or Supreme Court will be required to address on Defendants' appeal. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle,* 7 Wall. 506, 514 (1868)). It makes no sense as a matter of party or judicial resources for the parties to present argument addressing—and then for the Court to rule on—that threshold issue while it is being considered by the D.C. Circuit and, if necessary, the Supreme Court.

Plaintiffs thus hinge their partial opposition and cross-motion entirely on their assertion that they would suffer prejudice from a stay of further district court proceedings because an administrative record "would inform Plaintiffs' decisions on whether and how to seek further relief from this Court." Opp. 2. But Plaintiffs provide no good reason to depart from the sequence of Local Civil Rule 7(n).

Plaintiffs note that they sought broader relief than this Court granted, and claim that an administrative record would allow them to decide whether to seek again the broader relief—including relief directed toward a privacy-release policy—that this Court declined to grant. *Id.* at 4-5. But this Court denied the broader relief because the privacy-release issue "appears to be a discrete policy separate from the January 8 notice requirement and is not encompassed in Plaintiffs' challenge to that policy." Mem. Op. at 13 n.3 (Mar. 2, 2026), ECF No. 61. That was correct: the January 8, 2026 Memorandum setting forth the policy that requires Congressional staff to request facility visits seven calendar days in advance contains no reference to privacy-release policies or, indeed, any of the other policies that Plaintiffs claim they may challenge. *See* Mem. from Acting Dir. Lyons, *Congressional Access*

3

*to Alien Detention Facilities – Access Policy and Use of Appropriations for Enforcement*, (Jan. 8, 2026), ECF No. 39-1.  Indeed, Plaintiffs even cite a separate memorandum issued months after the January 8, 2026 memorandum setting out a new policy that they may seek to challenge, demonstrating that the additional policies they complain about are, in fact, distinct policies.  *See* Opp. 6 (citing Mem. from Acting Dir. Lyons, *Restoring Order and Integrity to Congressional Visits to Detention Facilities* 3 (May 11, 2026)).

Plaintiffs nonetheless insist that an administrative record would "help clarify exactly what the challenged policies encompass and to what extent Defendants' recent obstructions are either part of the challenged oversight visit policies . . . or new policies altogether."  Opp. 7.  This makes no sense: Defendants provided the challenged January 8 policy in its entirety, *see* ECF No. 39, and justification for that policy would have no bearing on any putative challenges to some other policies.  In other words, if Plaintiffs believe that ICE's new policies (or other old policies) are unlawful, they remain free to file a new lawsuit to challenge such policies.  But an administrative record for the January 8 advance-notice policy at issue in this action—and further litigation in this Court on the legality of that policy—would have no bearing on that decision.

Plaintiffs are therefore unable to establish any cognizable harm that they would suffer if a stay were to issue.  And because the remaining factors indisputably weigh heavily in support of a stay, this Court should stay all district court proceedings in this case pending an order from this Court following a joint status report proposing deadlines for further proceedings, with such status report to be filed within 14 days from the expiration of the time to seek certiorari, from any order denying certiorari, or, if certiorari is granted, from any opinion issued by the Supreme Court following a grant of certiorari.

Dated:  July 8, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/  Alexander W. Resar*
ALEXANDER W. RESAR
(N.Y. Bar No. 5636337)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20530
Tel:  (202) 616-8188
E-mail: alexander.w.resar@usdoj.gov

*Counsel for Defendants*

5